WO **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chris Alan Preston, | No. CV 11-1200-PHX-GMS (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Ben Alexander, et al., | |
| Defendants. | |

Plaintiff Chris Preston, through counsel, brought this civil rights action under 42 U.S.C. § 1983 against Mesa Police Department (MPD) Detective Alexander and MPD Officer Hurley alleging excessive force in violation of the Fourth Amendment (Doc. 8 at 2-3).[1] Before the Court is Defendants' Motion for Summary Judgment, which Plaintiff opposes (Docs. 25, 28). The Court will grant Defendants' motion and terminate this action.

**I.   Background**

Plaintiff's claim arose on April 3, 2011, when he was arrested by Defendants in Mesa, Arizona (Doc. 8, Am. Compl. ¶ D2). Plaintiff alleged that Defendants were in an unmarked vehicle and one of the Defendants jumped from the vehicle and ran toward Plaintiff (id. ¶ D4). Because he was not wearing a police uniform, Plaintiff asserted that he did not recognize the Defendant as a police officer and rode away on his bicycle in fear (id.).

---

[1] Plaintiff's original Complaint was filed *pro se*, but the First Amended Complaint was filed by counsel.

Plaintiff alleged that Defendants continued to chase him, drove in front of his bicycle, and made a stop and arrest for unlawful flight from a police officer (id. ¶ D5). At that time, Plaintiff claimed, Defendant Alexander proceeded to beat and punch Plaintiff without provocation (id.). As a result of Defendants' actions, Plaintiff suffered a blackened eye, cuts and abrasions over his entire face, a laceration on his head, and a broken tooth and also required hospitalization (id. ¶ D6). Plaintiff sought monetary damages (id. ¶¶ E1-E5).

The Court ordered Defendants to answer the First Amended Complaint (Doc. 14). They move for summary judgment on the ground that Plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994) (Doc. 25).

## II.     Governing Standards

### A.     Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita

1  Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation
2  omitted); see Fed. R. Civ. P. 56(c)(1).

3        At summary judgment, the judge's function is not to weigh the evidence and
4  determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477
5  U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all
6  inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited
7  materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

8      **B.**     **Heck v. Humphrey**

9        To recover damages for harm caused by actions whose unlawfulness would render a
10 conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence
11 has been reversed on direct appeal, expunged by executive order, declared invalid by a state
12 tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.
13 Heck, 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction
14 or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487. In
15 other words, if the conviction or sentence arises out of the same facts that underlie the alleged
16 unlawful behavior for which damages are sought, the § 1983 suit must be dismissed.
17 Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996). If a state prisoner seeks damages in
18 a § 1983 suit, a district court must therefore consider whether a judgment in favor of the
19 plaintiff would necessarily imply the invalidity of his conviction or sentence; if so, the
20 complaint must be dismissed. Heck, 512 U.S. at 487.

21       The Ninth Circuit Court addressed the circumstances under which Heck bars
22 excessive force claims arising out of an incident in which the plaintiff was convicted of
23 resisting arrest. See Smith v. City of Hemet, 394 F.3d 689, 693 (9th Cir.) (en banc), cert.
24 denied, 545 U.S. 1128 (2005). As the Smith opinion explained, an essential element of a
25 conviction for resisting a peace officer pursuant to California law is that the police officer
26 was "engaged in the performance of his official duties." Id. at 695. Under California law,
27 this means that the police officer was engaged in "lawful" conduct, including not using
28 excessive force. See id. at 695-96 (citing California state court decisions). Thus, if a

1 plaintiff was convicted for resisting a police officer during the course of an arrest, his
2 subsequent § 1983 claim that the police officer used excessive force during the course of that
3 arrest would, if successful, necessarily undermine the conviction. Id. at 697-98. In such
4 circumstances, the Heck bar applies. Id.

5 **III.   Defendants' Version of the Facts**

6 With their motion, Defendants submit a separate Statement of Facts (DSOF), which
7 is supported by Alexander's affidavit, the transcript from Plaintiff's change of plea
8 proceedings, and the minute entry documenting Plaintiff's sentencing (Doc. 26, Exs.).
9 Defendants set forth the following factual assertions:

10 Alexander observed Plaintiff riding a bicycle eastbound on the north side of the street
11 against the flow of traffic after dark without the required illuminated headlight (DSOF ¶ 1).
12 Defendants approached Plaintiff with the emergency lights of the patrol vehicle on (id. ¶ 2).
13 Alexander, who was wearing a black tactical vest with "POLICE" written on the front, back,
14 and sleeves, attempted to contact Plaintiff, who began screaming "No, no, no" and
15 accelerated away on his bicycle (id. ¶¶ 4-6). Alexander directed Plaintiff to stop but Plaintiff
16 ignored the command (id. ¶ 6). Alexander chased Plaintiff on foot while Hurley turned the
17 patrol vehicle around and followed Plaintiff into an apartment complex on Broadway Road
18 (id. ¶ 7). Alexander saw Hurley exit his vehicle and heard him give Plaintiff verbal
19 commands to place his hands behind his back, but Plaintiff did not comply and flailed his
20 arms and legs (id. ¶ 8).

21 Hurley struggled with Plaintiff and Alexander grabbed Plaintiff's right arm but
22 Plaintiff ripped it from his grasp (id. ¶ 9). During the struggle, Alexander repeatedly told
23 Plaintiff to place his hands behind his back but Plaintiff swung his right elbow into
24 Alexander's face, striking him in the mouth (id. ¶¶ 9-10). Alexander continued to attempt
25 to restrain Plaintiff, who continued to fight (id. ¶ 11). Eventually, Hurley handcuffed
26 Plaintiff and he was arrested (id. ¶ 12).

27 Plaintiff later pleaded guilty to resisting arrest (id. ¶ 17). During his plea colloquy,
28 Plaintiff acknowledged that he intentionally prevented or attempted to prevent the officers

1  from arresting him, that he knew Hurley was a police officer acting in his official duty, and
2  that he threatened or used physical force to resist arrest (id. ¶ 14).

3  **IV.   Analysis**

4  It is undisputed that Plaintiff was convicted of resisting arrest, and that this conviction
5  has not been expunged, reversed, invalidated or otherwise called into question (Doc. 26, Ex.
6  3). The controlling question in this case is whether the analysis in Smith applies here.
7  Smith drew a distinction between a plaintiff who resists officers before they use force, and
8  a plaintiff who resists during the course of the arrest and accompanying application of force.
9  Id. at 697-98. The Court identified different "phases" of the encounter between the plaintiff
10 and the officer, and held that if Smith's conviction was for his resisting the officers during
11 the "investigative phase," i.e. before the officers had begun to arrest and use force against
12 him, then Heck did not bar his claims that the force was excessive. Id. at 698. On the other
13 hand, if Smith's conviction was for resisting the officers while the officers were effecting
14 arrest and using the purportedly excessive force, then Heck did bar his claims that the
15 officers used excessive force. Id. at 698-99.

16 Although Plaintiff's conviction in this case was under Arizona law rather than
17 California law, this makes no difference for the present analysis. A defendant can only be
18 convicted of resisting arrest in Arizona if the officer's conduct was "lawful" when effecting
19 the arrest; an officer's conduct was not "lawful" if he used excessive force. See Ariz. Rev.
20 Stat. 13-404(B)(2) (a person may not use physical force to resist arrest by an officer unless
21 the physical forced used by the officer exceeds that allowed by law); State v. Fontes, 986
22 P.2d 897, 901 (Ariz. Ct. App. 1998) (if the force used to make the arrest is reasonable, the
23 defendant is not justified in using physical force to resist the arrest); see also State v. Sanders,
24 575 P.2d 822, 826 (Ariz. Ct. App. 1978) (no unnecessary or unreasonable force shall be used
25 in making an arrest and any excessive force used by an officer may be countered lawfully).

26 Plaintiff made no effort to respond to Defendants' specific argument that the excessive
27 force claim is Heck-barred under the reasoning articulated in Smith. Nor did Plaintiff file
28 a controverting statement of facts as required by Local Rule of Civil Procedure 56.1(b),

- 5 -

1 rendering Defendants' version of the facts uncontradicted. Further, Plaintiff states in his 2 statement of facts that as Defendants "attempted to make contact, a struggle ensued with 3 [Plaintiff], who was ultimately taken into custody. *During this struggle* [Plaintiff] was 4 beaten so severely that one of his front teeth was chipped" (Doc. 29, Pl.'s Statement of Facts 5 ¶ 3) (emphasis added). This statement confirms that Plaintiff's injuries were sustained *while* 6 he was resisting the officers' attempt to arrest him and not during another "phase" of the 7 incident. Further, Plaintiff admitted that he intentionally prevented or attempted to prevent 8 the officers from arresting him, that he knew Hurley was a police officer acting in his official 9 duty, and that he threatened or used physical force to resist arrest (Doc. 26, Ex. B, Change 10 of Plea Tr. 10:11-22).[2]

11 Nor does Plaintiff offer a single piece of evidence in opposition that suggests that any 12 force was used after Plaintiff was handcuffed and compliant. Thus, all of the evidence in the 13 record reflects that the entire incident involving the officers' use of force was a single course 14 of events. Instead of addressing this dispositive issue, Plaintiff maintains that the officers' 15 use of force was excessive under Graham v. Connor, 490 U.S. 386, 387 (1989), and claims 16 that he is not challenging his conviction but, instead, seeking compensation for the injuries 17 Defendants caused. But, as explained, Plaintiff misunderstands that being convicted under 18 Arizona's resisting arrest statute necessarily precludes a finding that an officer used 19 excessive force. And because if Plaintiff were to succeed on an excessive force claim in this 20 Court, it would necessarily imply the invalidity of that conviction. Thus, Plaintiff's claim 21 is Heck-barred and Defendants are entitled to summary judgment.

22 / / /
23 / / /
24 / / /

25

---

26 [2] Paragraph 3 of PSOF is also directly contradicted by the record: Plaintiff stated that Defendants were dressed in plain clothes, yet he acknowledged during his change of plea that 27 he knew Hurley was a police officer dressed in police gear with the word "POLICE" written 28 on it (Doc. 26, Ex. B, Change of Plea Tr. 10:16-18). In fact, none of Plaintiff's SOF contain citations to the record, thereby also violating Local Rule of Civil Procedure 56.1(e).

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 25) is **granted**. The Clerk of Court must dismiss this action without prejudice and enter judgment accordingly.

DATED this 11th day of April, 2013.

*A. Murray Snow*
G. Murray Snow
United States District Judge